# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J&J SPORTS PRODUCTION, INC.<br><br>　　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br><br>DAVID RAMOS<br>d/b/a DOS PATRONS<br><br>　　　　　　　　　　Defendant. | CASE NO. 11-cv-489-MMA (NLS)<br><br>**ORDER GRANTING MOTION FOR LEAVE TO FILE APPLICATION FOR DEFAULT JUDGMENT;**<br><br>[Doc. No. 23]<br><br>**GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT**<br><br>[Doc. No. 23-3] |

Currently before the Court is Plaintiff J&J Sports Production, Inc.'s ("J&J") Motion for Leave to File Application for Default Judgment against Defendant David Ramos [Doc. No. 23], and Plaintiff's Application for Default Judgment [Doc. No. 23-3]. For the reasons set forth below, the Court **GRANTS** Plaintiff leave to file the motion, and **GRANTS** Plaintiff's Application for Default Judgment, awarding total damages in the amount of **$9,800**.

## BACKGROUND

This case involves the prohibited broadcast of *The Event: The Manny Pacquiano v. Joshua Clottey, WBO Welterweight Championship Fight Program* ("Program") on March 13, 2012 at Defendant's establishment, Dos Patrons Mariscos Bar & Grill ("Dos Patrons"), located at 3065 Clairemont Drive, San Diego, California, 92117. Plaintiff possesses the exclusive nationwide

commercial distribution rights to the Program. Plaintiff alleges that Defendant willfully and knowingly intercepted and published the Program without Plaintiff's consent. Plaintiff's allegations are supported by the affidavit of investigator Rudy M. Gubach, who observed the unlawful exhibition of the Program at Defendant's commercial establishment. Pursuant to Mr. Gubach's affidavit, between 42 and 45 patrons were in Defendant's establishment during the unlawful broadcast. Plaintiff charged a license fee of $1,800 for establishments hosting between 1 and 100 patrons for the Program. [Doc. 11-4, Ex. 2.] Now, Plaintiff seeks Default Judgment pursuant to 47 U.S.C. § 605. Plaintiff alleges Defendant's violations were willfully committed for financial gain and therefore seeks enhanced statutory damages of $110,000 for violations under section 605, and $1,800 for a state law claim of conversion.

### A. Procedural Background Applicable to Plaintiff's Application For Leave to File Application for Default Judgment

On March 10, 2011, Plaintiff filed suit against Defendant David Ramos and others[1] for the above-described acts. [Doc. No. 1.] Nearly three months later, J&J served Defendant Ramos. [Doc. No. 5.] On July 14, 2011, the Clerk of Court entered default as to all Defendants. [Doc. No. 9.] Two months later, Defendant Ramos filed an *ex parte* motion to set aside the entry of default. On October 5, the Court gave J&J until October 19, 2011 to file a response to Defendant's motion. [Doc. No. 16.] J&J failed to respond. Thus, on November 28, 2011, the Court ordered the Clerk of Court to set aside the previous entry of judgment against Defendant. [Doc. No. 17.]

Next, Defendant failed to file a responsive pleading within 14 days of the November 28 Order, giving Plaintiff the opportunity to again seek a default judgment. Yet, the docket reflects no activity for several months.

Finally, on March 7, 2012, the Court set a dismissal hearing on April 23 for failure to move for default judgment. [Doc. No. 19.] In response, five days before the hearing, Plaintiff filed a request for Entry of Clerk's Default. [Doc. No. 20.] The Clerk of Court entered default on April 19, 2012. [Doc. No. 21.] Accordingly, the Court vacated the April 23 dismissal hearing.

---

[1] On November 28, 2011, the Court entered judgment against the other Defendants in the case. Thus, the Court's recitation of the procedural background includes only that which is applicable to Defendant Ramos.

1  Thereafter, the docket reflects no activity for nearly four months.  Then, on August 10, 2012,
2  Plaintiff filed the pending motion for leave to file an application for default judgment.  [Doc. No.
3  23.]  The Court took the matter under submission on September 25, 2012.  [Doc. No. 25.]

### DISCUSSION

### I. Extension of Time

Once the Clerk of Court enters default, a plaintiff must move the Court for entry of a default judgment within thirty days.  FED. R. CIV. P. 55(b)(2); CIV. L.R. 55.1.  Here, the Clerk of Court entered default on April 19, 2012, and Plaintiff took no action within the time permitted by Civil Local Rule 55.1.  The Court may extend Plaintiff's time to file a motion for entry of default judgment if it failed to timely act due to "excusable neglect."  FED. R. CIV. P. 6(b)(1)(B).  To determine whether Plaintiff's conduct constitutes excusable neglect, the Court considers four factors identified by the Supreme Court: (1) danger of prejudice to the non-movant; (2) the reason for the delay, including whether it was within the reasonable control of the movant; (3) the length of delay and its potential impact on judicial proceedings; and (4) whether the movant acted in good faith.  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship.*, 507 U.S. 380, 395 (1993).[2]  Notably, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect."  *Id*. at 392.

In support of Plaintiff's request to extend the time to move for default judgment, Plaintiff's counsel Thomas Riley indicates the failure to move for default judgment occurred due to an administrative oversight.  He apologizes for this oversight.  Counsel argues that the Court should allow him to file an untimely motion for entry of default, because, as Defendant has made no recent effort to participate in the litigation, there is no prejudice to Defendant and no compelling reason not to grant Plaintiff's request.  [*Plaintiff's Memorandum*, at 2.]

Turning to the factors set forth in *Pioneer*, the Court first notes that the prejudice to

---

[2] While *Pioneer* involved Bankruptcy Rule 9006(b), the court's analysis was based on the plain meaning of the phrase "excusable neglect" and drew on its use in other procedural contexts, including Fed. R. Civ. P. 6(b) and Fed. R. Crim. P. 45(b).  The Ninth Circuit has held that the court's analysis of "excusable neglect" in *Pioneer* applies to the use of that phrase in Fed. R. Civ. P. 6(b). *Committee for Idaho's High Desert v. Yost*, 92 F.3d 814, 825, n.4 (9th Cir. 1996).

Defendant is slight, as he has not made an appearance in the case beyond filing an *ex parte* motion to set aside an entry of default on October 5, 2011. The Court finds this factor weighs in favor of Plaintiff.

Next, Plaintiff cites a calendaring "administrative oversight" as the reason for the delay. The Court acknowledges this benign error, and encourages Plaintiff to undertake due effort to ensure that future administrative oversights are prevented.

Third, as a result of Plaintiff's repeated failure to prosecute the case, it has remained on the Court's docket without resolution for a year and six months, despite Plaintiff having several opportunities to move for default judgment against Defendant. This unreasonable delay contravenes the public interest in expeditious resolution of litigation and hinders the Court's ability to manage its docket. This factor weighs against Plaintiff.

Finally, the Court finds that Plaintiff did nothing that would indicate bad faith on its part. Plaintiff's error was caused by administrative oversight, not by other, more devious acts. Thus, this factor weighs in favor of Plaintiff.

Accordingly, for the reasons set forth above, the *Pioneer* factors weigh in favor of extending Plaintiff's time to file a motion for entry of default judgment and the Court hereby **GRANTS** Plaintiff's Motion for Leave to File Application for Default Judgment.

## II.     Application for Default Judgment

   *1.     Legal Standard*

When a court is considering whether to enter a default judgment, it has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *Kingvision Pay-Per-View v. Guzman*, 2009 WL 1475722, at *1 (N.D. Cal. 2009) (quoting *In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999)). Here, Defendant operates a business within California, so the Court may exercise personal jurisdiction over their activity. Additionally, the Court has subject matter jurisdiction because Plaintiff's claims arise under the Federal Communications Act of 1934, 47 U.S.C. § 605, and the Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553.

Pursuant to the Federal Rules of Civil Procedure 55(b)(2), a party may move the court for an entry of default judgment. The granting of a default judgment is within the court's discretion.

*Draper v. Coombs,* 792 F.2d 915, 924 (9th Cir. 1986). To rule on the issue, the court should consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Upon entry of default, the factual allegations in the plaintiff's complaint, except those relating to damages, are deemed admitted. *See, e.g.*, *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977)). Where the amount of damages claimed is a liquidated sum or capable of mathematical calculation, the court may enter a default judgment without a hearing. *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981). When it is necessary for the plaintiff to prove unliquidated or punitive damages, the court may require plaintiff to file declarations or affidavits providing evidence for damages in lieu of a full evidentiary hearing. *Transportes Aereos De Angola v. Jet Traders Invest. Corp.*, 624 F. Supp. 264, 266 (D. Del. 1985).

*2.     Analysis*

As a result of the default, the only issue remaining is the amount of damages to award. Plaintiff requests that the Court award $110,000 in damages under 47 U.S.C. § 605, and an additional $1,800 for a state law conversion claim. Plaintiff argues that such an award is justified to deter future violations, and because Defendant willfully violated the Communications Act.

Under Section 605, the Court may award between $1,000 and $10,000 for each violation as it considers just. 47 U.S.C. § 605(e)(3)(C)(i)(II). The statute also allows the court to increase its award by no more than $100,000 when the violation has been "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff requests the maximum award of $10,000, plus the maximum enhanced award of $100,000, for a total amount of $110,000 in statutory damages.

In evaluating whether to award enhanced damages, courts have relied on factors such as repeated violations, the intent to profit, and actual profit derived from the violations. *Kingvision*

1  *Pay Per View, LTD v. Ortega*, 2002 WL 31855367, *2 (N.D. Cal. 2002). "Where events were broadcast on a single occasion to a small audience, and the plaintiff produces little or no evidence of financial gain, courts typically have awarded only the $1,000 statutory minimum." *Universal Sports Network v. Jimenez*, 2002 WL 31109707, *1 (N.D. Cal. 2002). Furthermore, in the absence of "unusual or particularly egregious circumstances," the Court should not award the statutory maximum in damages. *Kingvision Pay-Per-View v. Guzman*, 2009 WL 1475722, at *3 (N.D. Cal. 2009) (quoting *Don King Prods. v. Maldonado,* 1998 WL 879683 (N.D. Cal. 1998)).

The facts do not appear sufficiently egregious to warrant awarding the statutory maximum in damages. Plaintiff does not allege repeated violations, does not claim that Defendant advertised the event, and offers only conclusory statements that Defendant realized financial gain from showing the Program. Instead, Plaintiff concedes there was no cover charge to enter the establishment. [*See Plaintiff's Memorandum of Points & Authorities*, at 11.] Thus, the Court finds that the amount of damages requested should be reduced. Still, a relatively large number of patrons were present during the Program, which was broadcast on nine separate televisions. Thus, the Court finds in its discretion to award damages greater than the statutory minimum. Further, the Court will enhance the award for intentional and willful conduct.

Therefore, after a thorough examination of the pleadings and declarations, and upon review of factually similar motions for default judgments, the Court awards Plaintiff **$9,800** in total damages. This award is the equivalent of the **$1,800** license fee Dos Patrons should have paid for the Program, plus **$4000** in statutory damages and **$4000** in enhanced damages.

## CONCLUSION

Based on the foregoing reasons, the Court **GRANTS** Plaintiff J&J Sports Production, Inc.'s Application for Default Judgment. Judgment shall be entered against Defendant, and a total of **$9,800** in damages shall be awarded to Plaintiff.

**IT IS SO ORDERED**.

DATED: October 1, 2012

_____
Hon. Michael M. Anello
United States District Judge